THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS F. WOGAN, Respondent, v. JOHN T. RAFFERTY, Appellant.

Constitutional law — invalidity of provisions of Judiciary Law which prevent incoming county clerk from appointing new chief clerk of County Court of Kings county.

1. Where the Constitution establishes a specified office, or recognizes its existence, and prescribes the manner in which it shall be filled, the legislature may not transfer any essential function of the office to a different officer chosen in a different manner.

2. When the legislature assumes the power to take from a constitutional officer the substance of the office itself, and to transfer it to another who is to be appointed in a different manner and to

hold the office by a different tenure than that which was provided for by the Constitution, it is not a legitimate exercise of the right to regulate the duties or emoluments of the office, but an infringement upon the constitutional mode of appointment.

3. Those portions of the Judiciary Law (Cons. Laws, chap. 30, § 195, as amd. by L. 1911, ch. 826; §§ 282, 283, as amd. by L. 1911, ch. 640) which operate to prevent an incoming county clerk from appointing a new chief clerk of the County Court of Kings county are unconstitutional, as also are those provisions which operate to vest such chief clerk with all the powers and authorize him to fulfill all the duties of the county clerk at any sitting or term of the County Court to the exclusion of the county clerk himself. The legislature has no power to deprive the county clerk of the clerkship of the County Court, to which he is entitled under the Constitution.

*People ex rel. Wogan* v. *Rafferty,* 154 App. Div. 767, reversed.

(Argued March 4, 1913; decided June 3, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 18, 1913, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury in an action in the nature of quo warranto.

The facts, so far as material, are stated in the opinion.

*Hugo Hirsh* for appellant. The legislature cannot by statute require or authorize to be performed by any other officer or authority powers conferred by the Constitution upon a specified elective officer, nor can it take from such officer rights, powers and duties vested in him by the Constitution. (*Warner* v. *People,* 2 Den. 283; *People* v. *Keeler,* 29 Hun, 175; *People ex rel. Burby* v. *Howland,* 155 N. Y. 270; *State* v. *Brunst,* 26 Wis. 412; *King* v. *Hunter,* 65 N. C. 603; *Hoke* v. *Henderson,* 4 Dev. 1; *State* v. *Hastings,* 10 Wis. 525; *People* v. *Draper,* 15 N. Y. 552; *People* v. *Albertson,* 55 N. Y. 57; *People* v. *Raymond,* 37 N. Y. 432; *Commonwealth* v. *Munn,* 5 Watts & S. 403, 405; *Reed* v. *Smolter,* 128 Penn. St. 324;

*Lowe* v. *Comm.,* 3 Metc. [Ky.] 237.) The Constitution does not define the powers, rights and duties attaching to or belonging to the office of county clerk. And, there-fore, the framers of the Constitution had reference to the office with the recognized duties and functions belonging to it when the Constitution was adopted. (*Freeholders of Middlesex* v. *Conger,* 67 N. J. L. 444; *Warner* v. *People,* 2 Den. 283.) That the county clerks were indis-putably recognized as being the clerks of the County Courts is apparent from the language of the early legislative enactments, which granted to the county clerk the power to appoint a deputy to attend and act in his name and stead in the courts of which he was clerk. (2 R. L. 149, § 17; L. 1815, ch. 88, § 2; L. 1831, ch. 237; 1 R. S. [6th ed.] §§ 173, 174, 175, 899; L. 1847, ch. 280; L. 1871, ch. 7, § 1; *Freeholders of Middlesex* v. *Conger,* 67 N. J. L. 444.) The act takes from the county clerk the power to act as clerk of the County Court and commits such powers to the hands of an appointive officer for a period greatly in excess of the entire term for which the elected officer is chargeable with these duties, leaving with him merely a strictly limited power of removal, and the power of appointment if a vacancy occurs. It is, therefore, unconstitutional. (*People ex rel. Conway* v. *Barker,* 14 Misc. Rep. 360; *People ex rel. McEwan* v. *Keeler,* 29 Hun, 175; *People* v. *Howland,* 17 App. Div. 165; *State ex rel. Kennedy* v. *Brunst,* 26 Wis. 412; *State ex rel. Crawford* v. *Hastings,* 10 Wis. 525; *McCabe* v. *Mazzuchelli,* 13 Wis. 478; *People* v. *Draper,* 15 N. Y. 552; *People* v. *Raymond,* 37 N. Y. 433; *People ex rel. Ward* v. *Scher,* 60 App. Div. 594; *People ex rel. Burby* v. *Howland,* 155 N. Y. 270; *People ex rel. Le Roy* v. *Foley,* 148 N. Y. 677.) The office of chief clerk of the County Court is not a county office, but a part of the office of county clerk, and by the law in question is merely a deputy of the county clerk. (*Freeholders of Middlesex* v. *Conger,* 67 N. J. L. 44; *Warner* v. *People,* 2 Den.

283.) The Judiciary Law as amended by the Laws of 1911 can be held to be constitutional in so far as it provided for the appointment of a deputy to act as chief clerk of the County Court, and yet be held to be unconstitutional so far as it takes away from every county clerk to appoint his own deputy. (*People* v. *Bull*, 46 N. Y. 69; *Gordon* v. *Cornis*, 49 N. Y. 612; *People* v. *Briggs*, 50 N. Y. 553; *Purdy* v. *Erie R. R. Co.*, 162 N. Y. 42; *Matter of De Vaucene*, 31 How. Pr. 289; *People ex rel. Devery* v. *Coler*, 173 N. Y. 103; *Hathorn* v. *Natural Carbonic Gas Co.*, 194 N. Y. 326; *People ex rel. Eldred* v. *Palmer,* 154 N. Y. 141.)

*Thomas Carmody, Attorney-General* (*Henry P. Molloy* of counsel), for respondent. The duties of the county clerk as clerk of the County Court are purely statutory. (*Warner* v. *People*, 2 Den. 272.) The Courts of Common Pleas and Courts of General Sessions of the Peace were called County Courts, and the clerks appointed for them by the colonial governors, in the course of time, acquired the name of county clerks. (*People ex rel. Livingston* v. *Albany Common Pleas*, 17 Wend. 27.) The County Court as created by the Constitution of 1846 and continued and enlarged by the Constitution of 1894 is a new court. (*Frees* v. *Ford*, 6 N. Y. 176; *People* v. *Brandner*, 107 N. Y. 1; *Foote* v. *Stevens,* 17 Wend. 483.) The powers and duties of the county clerk as clerk of the County Court being purely statutory, the legislature has absolute power to abolish, enlarge, diminish or regulate the exercise of those powers and duties. (*Matter of Carboy*, 27 Hun, 82, 84; *Bank of Chenango* v. *Brown*, 26 N. Y. 467.) The legislature had absolute power to create the office of chief clerk in the County Court of Kings county. (*Johnson* v. *State*, 37 Atl. Rep. 949.) The legislature has taken away from the office of county clerk many of its ancient prerogatives and the same have been held constitutional. (*People ex*

*rel. Taylor* v. *Duncan,* 66 N. Y. 162; *People ex rel. Kingsland* v. *Palmer,* 52 N. Y. 83.) The chief clerk is a deputy of the county clerk only with specially defined and limited powers. (*People ex rel. Conway* v. *Barber,* 14 Misc. Rep. 360; *Williamette Co.* v. *Gordon,* 6 Oreg. 175.) The Judiciary Law, as amended by the Laws of 1911, is constitutional in so far as it created the office of chief clerk and provided for the performance by such chief clerk of the duties imposed by the county judges, even admitting, for the sake of the argument alone, that the rest of the powers are unconstitutional. (*Matter of Da Vaucene,* 31 How. Pr. 289; *People ex rel. Devery* v. *Coler,* 71 App. Div. 584; 173 N. Y. 103.)

WILLARD BARTLETT, J. This appeal asserts the constitutional invalidity of certain portions of the Judiciary Law, as amended in 1911, relative to the appointment, tenure of office and powers and duties of the chief clerk for the County Court of Kings county. These provisions are found in three sections of the Judiciary Law. The first which we have to consider empowers the county clerk to appoint a deputy to act and be known as the chief clerk for the County Court of Kings county. (Judiciary Law, § 195, as amended by Laws of 1911, ch. 826.) The second fixes the term of office of such chief clerk at five years from the date of his appointment. (Judiciary Law, § 282, as amended by Laws of 1911, ch. 640.) The third provides that the said chief clerk shall have all the powers and fulfill all the duties of the county clerk of Kings county at any sitting or term of the County Court with respect to the business transacted thereat. (Judiciary Law [Cons. Laws, ch. 30], § 283, as amended by Laws of 1911, ch. 640.)

The fundamental objection urged against this legislation is that it is an attempt to take away from the county clerk, who is a constitutional officer, an integral and essential part of his office, to wit, the clerkship of the

County Court, and confer it upon another officer who, although described as a deputy, is not rea'ly a deputy at all, but by the terms of the statute is vested with exclusive powers in respect to such clerkship.

The question arises in this way. On July 13, 1911, Henry P. Molloy, then the county clerk of Kings county, appointed Thomas F. Wogan, the relator, to the position of chief clerk of the County Court of Kings county. Mr. Wogan entered upon the duties of the position and continued to discharge them until January 1, 1912, when Mr. Charles S. Devoy succeeded Mr. Molloy as county clerk. Mr. Devoy ignored any claim on the part of Mr. Wogan to continue to act as chief clerk for the County Court and appointed Mr. John T. Rafferty to that post. Mr. Wogan relinquished the clerkship to Mr. Rafferty, but speedily brought this action against him in the nature of quo warranto, to test the title to the office. The case was tried by consent before a judge without a jury, and the trial resulted in a judgment of ouster against the defendant, which has been unanimously affirmed by the Appellate Division.

Where the Constitution establishes a specified office, or recognizes its existence, and prescribes the manner in which it shall be filled, the legislature may not transfer any essential function of the office to a different officer chosen in a different manner. (*Warner* v. *People,* 2 Denio, 272, 281.) The authority of the legislature to regulate the duties of constitutional officers to some extent has frequently been recognized by the courts, but not to the extent of depriving them of a substantial attribute of the office. As was said by Chancellor WALWORTH in the case cited: "When the legislature, as in this case, assumes the power to take from a constitutional officer the substance of the office itself, and to transfer it to another who is to be appointed in a different manner and to hold the office by a different tenure than that which was provided for by the Constitution, it is not a

legitimate exercise of the right to regulate the duties or emoluments of the office, but an infringement upon the constitutional mode of appointment."

The *Warner* case involved the constitutionality of an act of the legislature passed in 1843, which provided that the clerk of the Court of Common Pleas for the city and county of New York should be appointed by the court, and should be and act as clerk of the County Court. At the time of the adoption of the Constitution of 1821 the county clerk of New York was clerk of the Court of Common Pleas. "The clerkship of the court," said Mr. Justice BRONSON, "was not a mere incident to the office of clerk of the county, but was a part of the office. * * * The question is whether the legislature had the constitutional power to pass such a law. I think it had not. In effect this statute divides the office of the clerk of the City and County of New York into two parts; and as to the largest share, in point of duty and emolument, takes the choice of the officer from the electors of the county, and gives the appointment to the court. If this can be rightfully done, I do not see any security for the residue of the office. The legislature may take that also, and give the appointment of the officer to some court, or to the governor and senate; and thus the constitutional provision for a choice by the electors would be completely nullified." (p. 274.)

To meet the force and effect of this decision as an authority the learned courts below and counsel for the respondent insist that whatever may have been the ancient powers and privileges of the county clerk in regard to the clerkship of the County Court, those powers and privileges did not continue after the adoption of the Constitution of 1846. This proposition is based on a remark in the opinion in *Frees* v. *Ford* (6 N. Y. 176) to the effect that the County Court referred to in that Constitution was "a new court with a limited statutory jurisdiction" instead of being a tribunal of general jurisdic-

tion, as was the old Court of Common Pleas. The distinction there under discussion, however, has no relevancy to the question here. We are concerned, in the present case, with the powers of the county clerk at the time of the adoption of the existing Constitution — the Constitution of 1894. That instrument provides that the existing County Courts "are continued" (Art. VI, § 14), and that sheriffs, clerks of counties, district attorneys and registers in counties having registers, shall be chosen by the electors of the respective counties (Art. X, § 1). The County Courts thus continued by the Constitution of 1894 were those mentioned in the Constitution of 1846, characterized as new in the case of *Frees* v. *Ford* (*supra*). The only intervening constitutional amendment affecting these tribunals was the judiciary article of the Constitution which was adopted in 1869, when the rest of the Constitution proposed by the convention of 1867 was rejected by the people. This judiciary article provided, in section 15 thereof, as follows: "The existing County Courts are continued and the judges thereof in office at the adoption of this article shall hold their offices until the expiration of their respective terms." So we have the County Courts of the Constitution of 1846 expressly continued down to the present day. If the county clerk was entitled to be and was clerk of the County Court as that tribunal existed under the Constitution of 1846, then he is entitled to remain clerk of the County Court now, under the principles laid down in the *Warner* case, the soundness of which has never been questioned.

By section 65 of chapter 280 of the Laws of 1847 it was provided that the clerks of the several counties should be, among other things, clerks of the County Courts and Courts of Sessions within their respective counties, except in the city and county of New York. They have remained clerks of the County Courts ever since and were such at the time of the adoption of the present Constitution. If, therefore, the clerkship of the County Court is a substan-

tial and essential attribute or part of the office of county clerk, the legislature cannot enact a statute which bestows that clerkship upon a non-elective officer to the exclusion of the county clerk, even though such officer be designated by the county clerk himself. In brief the county clerk cannot be deprived of the right to act as clerk of the County Court while the duties of such clerkship continue to exist.

The case of *State ex rel. Kennedy* v. *Brunst* (26 Wis. 412) is very similar in principle to the case at bar. There it was held by the Supreme Court of Wisconsin that "it was not competent for the legislature to take from the constitutional office of sheriff a part of the office itself, and transfer it to an officer appointed in a different manner, and holding the office by a different tenure from that which was provided for in the constitution," although the Constitution nowhere defined what powers, rights or duties should attach or belong to the office of sheriff, and these were ascertained in that particular case by reference to immemorial custom.

It is not intended to assert that the legislature may not authorize the county clerk to act through a deputy in performing his duties as clerk of the County Court of Kings county, and it matters not that this deputy is denominated a *chief* clerk; but the legislature cannot provide for such a chief clerk who may exercise his functions in such a way as to exclude the county clerk from any activities as clerk of the County Court or who may continue in office against the will of his nominal superior by reason of enjoying a fixed term; yet this is precisely what has been attempted here.

At first blush it may seem that a statute does not deprive the county clerk of the clerkship of the County Court which in terms expressly vests the county clerk himself with the power to appoint the deputy who is to act as chief clerk of the County Court. This view would be correct if the so-called deputy who is to act as chief

·clerk of the County Court was really a deputy whose term was coincident with that of the county clerk and who was removable by the county clerk at will; and if the statute did not virtually make the so-called deputy the clerk of the County Court to the virtual exclusion of the county clerk.   The term of the chief clerk being fixed by section 282 of the Judiciary Law as last amended at the period of five years, and the term of the county clerk of Kings county being only two years, it might very well happen that a county clerk would come into office finding a so-called deputy installed in the chief clerkship of the County Court, who was appointed by his predecessor and whom he would possess no power to remove or interfere with in the discharge of his duties in any manner, except in the case of official misconduct.   A statute which may operate in this manner practically deprives the county clerk of all real authority in the matter of the clerkship of the County Court, just as much as though the power of appointing the chief clerk of that tribunal were vested in a wholly different officer or body of officers.

In the opinion of the Appellate Division reference is made to the fact that under section 195 of the Judiciary Law as it was before being amended in 1907 the power to appoint the chief clerk for the County Court was vested in the county judges, and it is said that the validity of such procedure was unquestioned.   The fact that it was unquestioned, however, did not make the enactment constitutional.   Indeed, if the view which has been taken in this opinion is correct the bestowal of the power of appointment upon the county judges was a legislative act in disregard of the fundamental law.

Reference is also made to the fact that in recent years a large number of laws have from time to time been passed providing for the appointment of special deputy clerks by justices of the Supreme Court to attend upon the several parts of that court, and it is said that the validity of such legislation has been generally recognized

by the legislature, the state departments, the local authorities and the courts. In support of this statement the case of *Fink* v. *Wallach* (109 App. Div. 718) is cited. That case, however, does not discuss the constitutionality of such legislation at all, but so far as it relates to any question which is pertinent to this discussion merely holds that the deputies of the county clerk appointed by the justices of the Appellate Division in the first department under chapter 553 of the Laws of 1895 were in fact deputies of the county clerk himself; indeed, the statute under which such appointments are made expressly provides that such special deputy clerks and assistants shall be subject to the supervision of the county clerk. In any event, whatever may have been decided by the Appellate Division on this subject, it is clear that no legislation can be constitutional which prevents the county clerk from being the clerk of the Supreme Court. The Constitution (Art. VI, § 19) expressly provides as follows: " Clerks of the several counties shall be clerks of the Supreme Court, with such powers and duties as shall be prescribed by law." Under this provision the legislature may prescribe the powers and duties of the clerks of the Supreme Court, but it may not deprive the clerks of the several counties of the right to exercise and discharge those powers and duties by any form of legislation.

Again, it is said that the Constitution does not prescribe the duties of any county clerk in any respect save as provided in the clause above quoted, making the clerks of the several counties clerks of the Supreme Court; hence it is argued that inasmuch as there is no provision that the county clerks shall be clerks of the County Courts it was the intention of the framers of the Constitution to empower the legislature to make any provision it saw fit in respect to the clerkship of that tribunal. The answer to this proposition is found in the case of *Warner* v. *People* (*supra*) which as has been shown is clearly author-

ity for the proposition that the clerkship of the County Court is a substantial part of the office of county clerk.

The conclusions which have been reached may be stated as follows: Those portions of the Judiciary Law which operate to prevent an incoming county clerk from appointing a new chief clerk of the County Court of Kings county are unconstitutional; as also are those provisions which operate to vest said chief clerk with all the powers and authorize him to fulfill all the duties of the county clerk at any sitting or term of the County Court to the exclusion of the county clerk himself. In other words, the legislature has no power by fixing the term of the chief clerk of the County Court at five years to deprive the county clerk of the clerkship of the County Court, to which he is entitled under the Constitution. No objection is perceived, however, to the validity of the other portions of the Judiciary Law which have been considered. Only those provisions are unconstitutional which interfere with the free exercise of the right of the county clerk to control any deputy whose appointment is authorized by law to act in his behalf as clerk of the County Court.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and, inasmuch as the facts are undisputed and could not be changed upon a new trial, judgment should be directed upon the findings in favor of the appellant, with costs in all courts.

CULLEN, Ch. J., GRAY, WERNER, CHASE, COLLIN and HOGAN, JJ., concur.

Judgment reversed, etc.